# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| STEPHANIE WYATT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 15-00001-CV-W-DGK-SSA |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## ORDER AFFIRMING THE COMMISSIONER'S DECISION

Plaintiff Stephanie Wyatt seeks judicial review of the Commissioner of Social Security's ("Commissioner") decision denying her application for supplemental security income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381–1383f. The Administrative Law Judge ("ALJ") found that Plaintiff suffered from several severe mental impairments, but she retained the residual functional capacity ("RFC") to perform work as an industrial cleaner, laboratory equipment cleaner, and an ampoule[1] filler.

Because substantial evidence on the record as a whole supports the ALJ's conclusion that Plaintiff did not meet Listing 12.05C, the Court affirms the Commissioner's denial of benefits.

## Factual and Procedural Background

A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary. Plaintiff filed her application on July 3, 2012, alleging a disability onset date of September 21, 1988. The Commissioner denied her application, and she requested a hearing with the ALJ. After the hearing, the ALJ affirmed the Commissioner's denial of benefits. Plaintiff sought review from the Appeals Council, but it denied her request, leaving the

---

[1] "[A] small bulbous glass vessel hermetically sealed and used to hold a solution for hypodermic injection." *Ampoule*, Webster's Third International Dictionary 74 (3d ed. 2002).

ALJ's determination as the Commissioner's final decision.  As all administrative remedies have been exhausted, judicial review is now appropriate under 42 U.S.C. § 1383(c)(3).

## Standard of Review

A federal court's review of the Commissioner's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011). Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind would find it sufficient to support the Commissioner's decision.  *Id.*  In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it.  *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000).  The court must "defer heavily" to the Commissioner's findings and conclusions.  *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010).  The court may reverse the Commissioner's decision only if it falls outside of the available zone of choice, and a decision is not outside this zone simply because the court might have decided the case differently were it the initial finder of fact.  *Buckner*, 646 F.3d at 556.

## Analysis

In determining whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of not less than twelve months, 42 U.S.C. § 423(d), the Commissioner follows a five-step sequential evaluation process.[2]

---

[2] "The five-step sequence involves determining whether (1) a claimant's work activity, if any, amounts to substantial gainful activity; (2) his impairments, alone or combined, are medically severe; (3) his severe impairments meet or medically equal a listed impairment; (4) his residual functional capacity precludes his past relevant work; and (5) his residual functional capacity permits an adjustment to any other work.  The evaluation process ends if a determination of disabled or not disabled can be made at any step." *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 632 n.1 (8th Cir. 2014); *see* 20 C.F.R. § 416.920(a)–(g).  Through Step Four of the analysis the claimant bears the burden of showing that he is disabled.  After the analysis reaches Step Five, the burden shifts to the Commissioner. *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009).

Plaintiff challenges the ALJ's Step Three finding that she did not meet Listing 12.05C, one of the listings for intellectual disabilities.[3] To prove disability at Step Three, Plaintiff must show that her impairment meets or equals all the specified criteria in a listing. *See Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004). To meet Listing 12.05C, Plaintiff must show the following: "(1) a valid verbal, performance, or full scale IQ of [60-70]; (2) an additional 'severe' impairment; and (3) evidence supporting the onset of intellectual and adaptive functioning disability before age twenty-two." *Lott v. Colvin*, 772 F.3d 546, 550 (8th Cir. 2014) (citing *Maresh v. Barnhart*, 438 F.3d 897, 899 (8th Cir. 2006) (holding that to meet 12.05C, the claimant must satisfy the requirements of the introductory paragraph of Listing 12.05 as well as the additional criteria listed in subsection C)).

The ALJ determined that Plaintiff failed to meet Listing 12.05C because the record showed that she did not have deficits in adaptive functioning before age twenty-two. R. at 16. Plaintiff challenges this finding, arguing that she presented sufficient evidence on her adaptive functioning deficits, and thus, she "met" Listing 12.05C.[4]

Substantial evidence on the record as a whole supports the ALJ's finding. First, the record shows that although Plaintiff had some academic difficulties in high school that required curriculum modifications and some special assistance, she also exhibited strengths that were inconsistent with deficits in adaptive functioning. R. 129-46. For instance, her high school teacher noted that she actively participated in class, assisted others, worked hard, and displayed

---

[3] Effective September 3, 2013, the Social Security Administration substituted "intellectual disability" for "mental retardation" in the listings. Change in Terminology, 78 Fed. Reg. 46499 (Aug. 1, 2013). The Court thus uses "intellectual disability" unless quoting another source.

[4] Plaintiff never argues that the ALJ erroneously failed to consider whether Plaintiff's combination of impairments "medically equaled" the severity of Listing 12.05C. *See* Pl.'s Brief at 11-12 ("It is quite apparent that she does, in fact, *meet* a listing and, accordingly, should have received a fully favorable decision from the ALJ….The plaintiff has consistently alleged that she *meets* listing 12.05 C." (emphasis added)). The Court thus only addresses whether the ALJ erred in concluding that Plaintiff's alleged intellectual deficits "met" the requirements of 12.05C.

3

proficiencies in self-advocacy. R. at 130. And she never engaged in violent, aberrant, or antisocial behavior—hallmarks of deficits in adaptive functioning. *See Lott*, 772 F.3d 550-51 (finding that the claimant's record of "violent altercations" during childhood and adolescence showed deficits in adaptive functioning); *Maresh*, 438 F.3d at 900 ("Maresh also exhibited deficits in adaptive functioning at a young age, when he had frequent fights with other children."). On the contrary, Plaintiff ably maintained interpersonal relationships with teachers and friends. R. at 130. This record of normal social functioning in the school setting supports the ALJ's finding.

The ALJ also properly considered Plaintiff's daily activities. For instance, Plaintiff cared for her children (even before age twenty-two), lived independently, performed some household chores, and drove her car. R. at 41-42, 191, 197-98, 213-15, 216, 226, 230. These activities undermine Plaintiff's allegations that she experienced adaptive functioning deficits. *See Johnson v. Colvin*, 788 F.3d 870, 873 (8th Cir. 2015) ("Johnson can read, write, and count change; can care for herself and her youngest son, whom she raised from infancy; and can perform most household tasks. These activities are not consistent with the deficits in adaptive functioning contemplated by Listing 12.05C."); *Cheatum v. Astrue*, 388 F. App'x 574, 576-77 (8th Cir. 2010) (finding that claimant's daily activities undermined her allegations that she suffered deficits in adaptive functioning).

The ALJ also properly considered the Plaintiff's clinical diagnoses. Although a claimant need not have a "formal diagnosis of mental retardation" to meet Listing 12.05C, *see Christner v. Astrue*, 498 F.3d 790, 793 (8th Cir. 2007), the existence of diagnoses suggesting that the claimant functioned above that level may undermine the claimant's allegations that she suffered from deficits in adaptive functioning. *See Johnson*, 788 F.3d at 873 (considering diagnoses of "low average intelligence" and "borderline intellectual functioning" to be inconsistent with

4

listing level deficits in adaptive functioning). Here, consultative examiners Lynn Lieberman, Ph.D., and Nina Epperson, M.S., both diagnosed Plaintiff with "borderline intellectual functioning." R. at 194, 199. Likewise, Marc A Schlosberg, Ph.D., diagnosed her with "mental retardation, mild vs. borderline intellectual functioning." R. at 185. These diagnoses undermine Plaintiff's allegations that she suffered from deficits in adaptive functioning. *See Johnson*, 788 F.3d at 873.

For these reasons, the ALJ's decision falls within the available zone of choice. *See Buckner*, 646 F.3d at 556; *see also id.* ("While some evidence may suggest Johnson has some level of intellectual disability, 'the mere fact that some evidence may support a conclusion opposite to that reached by the Commissioner does not allow this Court to reverse the decision of the ALJ.'" (*Johnson*, 390 F.3d at 1070)).

## Conclusion

Since substantial evidence on the record as a whole supports the ALJ's conclusion that Plaintiff did not meet Listing 12.05C, the Commissioner's denial of benefits is AFFIRMED.

**IT IS SO ORDERED.**

Date:  September 2, 2015              /s/ Greg Kays
                                       GREG KAYS, CHIEF JUDGE
                                       UNITED STATES DISTRICT COURT